UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUSAN BUCKLEY, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>Defendant. | Case No. 5:13-cv-02812-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 32 |

Plaintiff Susan Buckley ("Plaintiff") brings this class action suit against Defendant Align Technology, Inc. ("Align") alleging misrepresentation in the performance of the Invisalign system. Presently before the court is Align's Motion to Dismiss Plaintiff's second amended complaint. See Dkt. No. 32. Federal jurisdiction arises pursuant to 28 U.S.C. § 1331 and § 1332(d)(2). The court found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7–1(b) and vacated the hearing. Having fully reviewed the parties' papers, the court GRANTS Align's motion for the following reasons.

**I.   BACKGROUND**

Align is a Delaware corporation that "designs, manufactures, markets and sells the Invisalign system . . . as well as 3D digital scanning products and services for orthodontic and restorative dentistry worldwide." Dkt. No. 29, Second Am. Compl. ("SAC") at ¶ 10. Align's Invisalign system "consists of a series of doctor-prescribed, custom manufactured, thin, clear plastic removable orthodontic appliances (aligners) that move the patient's teeth in small increments from their original state to a more optimal, treated state." Id. at Exh. A. The

Invisalign system is used to treat the misalignment of teeth, or malocclusion, and is offered through dentists and orthodontists that work in conjunction with trained Invisalign orthodontists. Id. at ¶ 10. The Invisalign system has been used to treat more than 1.5 million patients, and is sold throughout the United States and in over 45 countries. Id.

Plaintiff alleges that she has a malocclusion which consists of a smooth or level nature of the surface of her molars and sub-molars resulting in a poor bite, and which requires dental procedures other than those provided by Align, such as crowns, to correct it. Id. at ¶¶ 1-2. Plaintiff asserts that she purchased the Invisalign system manufactured by Align for $4,000. Id. at ¶ 8. Her dentist allegedly took dental impressions of her teeth, and sent them to Align to be evaluated and approved. Id. at ¶ 23. Thereafter, Align made the aligners for her. Id. She allegedly wore the aligners as directed from December 2008 through November 2010, later discovering that the Invisalign system was not treating her malocclusions. Id. at ¶ 8. In October 2011, Plaintiff allegedly underwent a dental treatment to correct dental issues that the aligners caused and failed to treat. Id. at ¶ 9.

Plaintiff alleges that Align falsely advertised, misled and deceived her and other consumers into believing that the Invisalign aligners could treat their malocclusions. Id. at ¶ 5. Plaintiff claims that Align's misrepresentations are prominently displayed in brochures placed in dentists' and orthodontists' offices, advertisements, and the www.invisalign.com website. Id. Plaintiff claims that, in deciding to purchase the aligners, she relied upon the misrepresentations located in brochures, the product's packaging information, and Align's evaluation of her dental impressions, just to later discover that the Invisalign system could not help her type of malocclusion. Id. at ¶¶ 3, 5-6. Accordingly, Plaintiff alleges that she and the class members would not have purchased Align's Invisalign system had they known the aligners were not capable of treating their malocclusions. Id. at ¶ 5. Moreover, Plaintiff claims that it is readily apparent from her dental impressions that she had a type of malocclusion that could not be corrected and/or treated with the aligners. Id. at ¶ 6.

In June 2013, Plaintiff commenced the instant action alleging various claims grounded on breach of warranty, unjust enrichment, violation of California consumer protection statutes, and negligent misrepresentation. See Dkt. No. 1. Three months later, Plaintiff amended her complaint. See Dkt. No. 14. Align subsequently filed a motion to dismiss, which was granted with leave to amend. See Dkt. Nos. 15, 28. In June 2013, Plaintiff filed a Second Amended Complaint, which is the operative complaint, alleging: (1) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.; (2) unjust enrichment; (3) money had and received; (4) breach of express warranty; (5) violation of California's Unfair Competition Law; (6) violation of California's False Advertising Law; (7) violation of California's Consumer Legal Remedies Act; and (8) negligent misrepresentation. See Dkt. No. 29. In October 2014, Align filed the instant Motion to Dismiss. See Dkt. No. 32 ("Mot."). Plaintiff filed an opposition brief, and Align filed a reply brief. See Dkt. Nos. 35 ("Opp."), 36 ("Reply").

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal pursuant to Rule 12(b)(6) may be based on either (1) the "lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim in the complaint with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court must accept as true all of the factual allegations contained in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1990). While intricate detailed factual allegations are not necessary, plaintiffs must allege sufficient facts that move beyond the level of speculation to

1  "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

2  Fraud-based claims are subject to further heightened pleading requirements under Federal Rule of Civil Procedure 9(b). A party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The allegations must be "specific enough to give defendants notice . . . so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations must contain "'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). Allegations of fraud must also contain an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007).

## III. DISCUSSION

### A. Fraud-Based Claims

This Court previously ruled that even though fraud is not necessarily an element of each claim, all of Plaintiff's claims are subject to the heightened pleading standard of Rule 9(b) because the crux of Plaintiff's allegations are premised on a uniform course of fraudulent conduct. See Vess, 317 F.3d at 1103-04 (holding that when a plaintiff "allege[s] a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim . . . the claim is said to be 'ground in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."). Thus, Plaintiff's claims will collectively be evaluated pursuant to the Rule 9(b) heightened pleading standard.

In its motion, Align argues that Plaintiff fails to plead an actionable misrepresentation. Mot. at 6. According to Align, Plaintiff fails to allege that she saw a specific representation that Invisalign would do more than straighten her crooked teeth, that Invisalign was marketed to fix her "worn down" teeth, and that Invisalign was unable to treat malocclusion by straightening the teeth of other patients. Id. The Court agrees with Align that Plaintiff's allegations are deficient.

While Plaintiff alleges that she relied upon the misrepresentation located in an Invisalign brochure she picked up in her dentist's office, she fails to specifically allege what the brochure said that led her to believe her particular malocclusion could be fixed with the Invisalign system. See SAC at ¶ 5. Plaintiff further alleges she was promised that the Invisalign system would treat her malocclusion, but fails to specifically allege who made this promise. See id. at ¶ 8. Plaintiff provides no specific allegations as to what information Align conveyed to her that was false or misleading, and upon which she relied to purchase the Invisalign system. Instead, Plaintiff makes a series of conclusory allegations that Align uses "misleading marketing practices," that Align has "falsely advertised, misled and deceived customers," and that she "relied upon the misrepresentations." See id. at ¶¶ 5-7, 9, 17.

Moreover, Plaintiff provided a screenshot of the Invisalign website showing that the Invisalign system is designed to treat "difficult dental problems involving serious malocclusion." See id. at ¶ 18. Plaintiff suggests that the Invisalign system was marketed to treat "worn down" tooth surfaces, which is her type of malocclusion. See id. at ¶¶ 3, 17. However, there is no indication in the screenshot of what type of "serious malocclusion" the Invisalign system can treat, nor is there an indication that Plaintiff's "worn down" teeth can be treated by Invisalign. Instead, the Invisalign system's instructions for use provide that the system is unable to treat "[t]ooth malocclusion requiring surgical correction," which is precisely the type of malocclusion Plaintiff alleges she has. See id. at ¶¶ 1, 20; Exh. A. Thus, in evaluating Plaintiff's allegations as a whole, along with this observation, it is implausible to expect a plastic removable aligner specifically molded to one's teeth would treat a type of malocclusion consisting of worn down teeth surface since Plaintiff admits that this type of malocclusion requires dental procedures, such as crowns. See id. at ¶ 1.

Plaintiff has not sufficiently alleged a misrepresentation that is actionable. To that end, she has failed to specifically identify any false or misleading statements made to her by Align regarding the Invisalign system's ability to fix her malocclusion. Nor is her theory a logical one. See Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014) ("In all cases, evaluating a

complaint's plausibility is a context-specific endeavor that requires courts to draw on judicial experience and common sense.") (internal quotations omitted).  Accordingly, Plaintiff has failed to adequately state any claim.

### B. Learned Intermediary Doctrine

As another basis for dismissal, Plaintiff's claims fail under California's learned intermediary doctrine to the extent they are based on a failure to warn.  "California law follows the learned intermediary doctrine, which provides that in the case of prescription drugs, the duty to warn runs to the physician, not to the patient."  Stanley v. Novartis Pharm. Corp., 11 F. Supp. 3d 987, 1002 (C.D. Cal. 2014) (internal quotations omitted).  Consequently, "a manufacturer discharges its duty to warn if it provides adequate warnings to the physician about any known or reasonably knowable dangerous side effects, regardless of whether the warning reaches the patient."  Id.  Moreover, "a plaintiff asserting causes of action based on a failure to warn must prove not only that no warning was provided or the warning was inadequate, but also that the inadequacy or absence of the warning caused the plaintiff's injury."  Id.

In its motion, Align argues that Plaintiff's claims are barred under the learned intermediary doctrine because Plaintiff fails to allege that her dentist was misled by Align.  Mot. at 11.  In opposition, Plaintiff contends that Align is not absolved of liability because it independently evaluated her set of dental impressions.  Opp. at 11.

The Invisalign aligners are prescribed exclusively by the dentist, and are custom-manufactured by Align.  See SAC, Exh. A.  It appears, thus, that Align stands in the position of a manufacturer, not a medical evaluator.  As such, Align has a duty to warn the dentist about any dangerous side effects pertaining to the Invisalign treatment, but has no duty to directly warn Plaintiff.  See Brown v. Super. Ct., 44 Cal. 3d 1049, 1062 (1988) ("The manufacturer cannot be held liable if it has provided appropriate warnings and the doctor fails in his duty to transmit these warnings to the patient or if the patient relies on inaccurate information from others regarding side effects of the drug."); Stevens v. Parke, Davis & Co., 9 Cal. 3d 51, 65 (1973) ("In the case of medical prescriptions, if adequate warning of potential dangers of a drug has been given to

6

1 doctors, there is no duty by the drug manufacturer to insure that the warning reaches the doctor's
2 patient for whom the drug is prescribed.") (internal quotations omitted). Therefore, to the extent
3 Plaintiff alleges a failure to warn, those claims are barred against Align due to the learned
4 intermediary doctrine.

### C. Money-Had-And-Received Claim

Money-had-and-received is a recognized cause of action "based upon an implied promise which the law creates to restore money which the defendant in equity and good conscience should not retain." Pollak v. Staunton, 210 Cal. 656, 665 (1930). For a plaintiff to recover, "she must show that a definite sum, to which she is justly entitled, has been received by defendant." Bastanchury v. Times-Mirror Co., 68 Cal. App. 2d 217, 236 (1945). A plaintiff must also plead that "the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff." Schultz v. Harney, 27 Cal. App. 4th 1611, 1623 (1994) (internal citations and quotations omitted).

Align argues as an additional basis for dismissal that Plaintiff's money-had-and-received claim should be dismissed because she fails to allege a definite sum received by Align. Mot. at 12. While Plaintiff alleges that she purchased the Invisalign aligners for $4,000 (SAC at ¶ 53), she argues that the exact amount allocated to Align is unknown since that information is in exclusive possession of her dentist and Align. Opp. at 14.

"The foundation of an action for conversion on a money had and received count is the unjust enrichment of the wrongdoer[.]" Walter v. Hughes Commc'ns, Inc., 682 F. Supp. 2d 1031, 1047 (N.D. Cal. 2010). Here, Plaintiff paid for aligners, she received the product and used them for nearly two years. It is unclear how Align is indebted to Plaintiff, or how it has unjustly enriched from Plaintiff's payment. Using a product for nearly two years does not justly entitled Plaintiff to a refund. As such, Plaintiff has inadequately pled a claim for money-had-and-received.

### IV. CONCLUSION

Based on the foregoing, Align's Motion to Dismiss is GRANTED. Plaintiff has had three attempts to submit a well-pleaded complaint, and due to the failure to do so, providing further

7
Case No.: 5:13-cv-02812-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS




1  leave to amend would be futile.  Therefore, Plaintiff's claims are DISMISSED WITH

2  PREJUDICE AND WITHOUT LEAVE TO AMEND.  Judgment will be entered in favor of Align

3  and the Clerk shall close this file.

4

5  **IT IS SO ORDERED.**

6  Dated: September 29, 2015



EDWARD J. DAVILA
United States District Judge

8

Case No.: 5:13-cv-02812-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS